IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROCKY LEEPER, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:16-CV-819-RP |
| TRAVIS COUNTY, TEXAS, et al., | § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is a motion for summary judgment filed by Defendants Travis County, Texas, Greg Hamilton, Joshua Johnson, Bradley Payne,[1] Amy Smith, Claudia Garcia, Nurse Prince, Dawn Kline, and Kathryn Smith (collectively, "Defendants"). (Dkt. 36). Having considered the parties' arguments, the evidence, and the relevant law, the Court will grant the motion.

## I. BACKGROUND

Plaintiff Rocky Leeper ("Leeper") was incarcerated in the Travis County Correctional Complex for more than two months in the summer of 2014. (Mot. Summ. J., Dkt. 36, at 3). Leeper is a person with disabilities who uses a wheelchair. (*Id.*). In his amended complaint, Leeper alleges that Defendants committed a variety of abusive acts during his time in jail, such as denying him necessary medical care, using excessive force, and housing him in a unit that did not accommodate his disabilities. (Am. Compl., Dkt. 30, at 2–9). Some of these allegations are isolated incidents involving individual defendants; others involved concerted action by multiple defendants. (*Id.*). Out of these allegations, Leeper asserts various causes of action, including claims under 42 U.S.C. § 1983 ("Section 1983"), the Americans with Disabilities Act, 42 U.S.C. §§ 12102 *et seq.* ("ADA"), and an

---

[1] Plaintiff asserts separate claims against defendants identified as "Bradley Ellis" and "B. Payne." (Am. Compl., Dkt. 30, ¶¶ 89, 90). Those claims refer to the same person: an officer named Bradley Ellis Payne. (Answer, Dkt. 20, ¶ 46; Mot. Summ. J., Dkt. 36, at 1).

unidentified provision of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). (*Id.* at 6–8, 9-13).

Defendants ask the Court to grant summary judgment in their favor on each of Leeper's claims. (Mot. Summ. J., Dkt. 36, at 46). Defendants assert qualified immunity with respect to each of Leeper's claims. (*See* Am. Answer, Dkt. 33, ¶ 85; Mot. Summ. J., Dkt. 36, at 7–8).[2] Leeper initially filed an untimely response, which Court considered in light of his *pro se* status. *See* W.D. Tex. Loc. R. CV-7(e)(2) (requiring parties to file responses to dispositive motions within 14 days); *Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) (disapproving of an automatic grant of a dispositive motion for failure to comply with local rules). However, Leeper's unsworn amended complaint and response were not competent summary judgment evidence, and Leeper therefore failed to address most of Defendants' assertions of fact with appropriate summary judgment evidence. (*See* Order, Dkt. 47). In accordance with Federal Rule of Civil Procedure Rule 56(e),[3] the Court permitted Leeper to properly address Defendants' motion. (*Id.* at 3–5).[4] Leeper then filed a supplemental response, (Dkt. 49), and Defendants replied, (Dkt. 50).

## II. LEGAL STANDARDS

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[2] Although each defendant asserts qualified immunity, the Court only considers the applicability of that defense to Leeper's claims against Payne, Johnson, and Garcia. *See infra* Section III.E. The Court concludes that each other defendant is entitled to summary judgment on other grounds and therefore needs not determine whether those defendants are entitled to qualified immunity.

[3] Summary judgment "cannot be granted by default even if there is a complete failure to respond to the motion, much less when an attempted response fails to comply with Rule 56(c) requirements." Fed. R. Civ. P. 56(e) advisory committee's note. Rather, if a party fails to properly address the opposing party's assertion of fact, a court should take an action designated by Federal Rule of Civil Procedure 56(e). Fed. R. Civ. P. 56(e). "The choice among possible orders should be designed to encourage proper presentation of the record," and courts should "take extra care with pro se litigants, advising them of the need to respond and the risk of losing by summary judgment if an adequate response is not filed." Fed. R. Civ. P. 56(e) advisory committee's note.

[4] In that same order, the Court granted summary judgment in favor of Defendants on Leeper's ADA causes of action against Defendants A. Smith, Johnson, Garcia, Payne, and Prince in their individual capacities, as well as Leeper's HIPAA claim against Defendant Prince. (Order, Dkt. 47, at 4).

2

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). "Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir.2003).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the "burden of production at trial ultimately rests on the nonmovant," the movant must merely show an "absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010). The nonmoving party must then come forward with specific facts showing that there is a genuine issue for trial. *Id.* There is "no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. The nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010); *see also Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991) ("Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence."). Moreover, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* Even when considering a qualified immunity defense, however, the Court must view the evidence in the light most favorable to the non-movant and draw all inferences in the non-movant's favor, *Rosado v. Deters*, 5 F.3d 119, 122–23 (5th Cir. 1993), and cannot make credibility determinations or weigh the evidence, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## III. DISCUSSION

Defendants have met their initial burden under Rule 56: In their motion for summary judgment, which applies to each of Leeper's claims against each Defendant, they have informed the Court of the basis for its motion and identified the portions of the pleadings that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Accordingly, the burden shifts to Leeper to identify facts that demonstrate a genuine issue of material fact for trial. *Cuadra*, 626 F.3d at 812. Leeper can rely neither on the allegations in his unsworn amended complaint, nor on statements made in his unsworn response to Defendants' motion. *Duffie*, 600 F.3d at 371; *Larry*, 929 F.2d at 211 n.12. Leeper's summary judgment evidence is therefore limited to the fifteen-page attachment to his response, (Dkt. 40-1), and the sworn statements in his supplemental response, (Dkt. 49). Leeper asserts claims against ten different defendants; the Court will address each set of claims in turn.

### A. Kline

Defendant Dawn Kline ("Kline") is a nurse who interviewed Leeper at booking as part of his medical and mental health screening. (Kline Aff., Dkt. 36-2, ¶ 7). Leeper alleges that Kline told him that he would not receive the medications he had been taking and that she refused to record

4

them. (Am. Compl., Dkt. 30, ¶ 82). Leeper alleges that the failure to provide him with his medications caused severe weight loss (from 180 pounds to 80 pounds over six months) and seizures. (*Id.* ¶¶ 83–84; Supp. Resp. Mot. Summ. J., Dkt. 49, at 3). He asserts a cause of action under Section 1983 against Kline for violating his rights under the Eighth Amendment to the United States Constitution. (Am. Compl., Dkt. 30, ¶ 84).[5]

The Fourteenth Amendment requires that state officials not disregard the "basic human needs" of pretrial detainees, including medical care. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). An official violates this right when he or she responds to a detainee's serious medical needs with deliberate indifference. *Id.* Deliberate indifference is shown when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not.").

Leeper states that Kline did not ask about his weight. (Supp. Resp. Mot. Summ. J., Dkt. 49, at 3). Leeper's intake form shows that Kline recorded Leeper's weight at 143 pounds. (Intake Form, Dkt. 36-2, at 6). Leeper states that he told Kline about his current medications but that she refused to record them. (Supp. Resp. Mot. Summ. J., Dkt. 49, at 3). Leeper's intake form lists several medications as being currently prescribed to him. (Intake Form, Dkt. 36-2, at 8). Leeper states that

---

[5] A pretrial detainee's constitutional rights "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment" rather than from the Eighth, which applies to convicted prisoners. *Hare*, 74 F.3d at 639. The Court liberally interprets Leeper's *pro se* pleadings and briefs and therefore construes his claim to seek relief for a violation of his rights under the Fourteenth Amendment. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Kline told him that "we will just see" if he would receive several medications he was not currently prescribed. (Supp. Resp. Mot. Summ. J., Dkt. 49, at 3). Kline is not authorized to prescribe or discontinue medication. (Kline Aff., Dkt. 36-2, at 4 ¶ 17). From this evidence, no reasonable jury could conclude that Kline knew of and disregarded an excessive risk to Leeper's health. Kline has met her burden to show that there is no genuine issue of fact for this claim. She is entitled to summary judgment.

*B. Amy Smith*

Defendant Amy Smith ("Amy Smith") is a nurse who attended to Leeper in the jail. (A. Smith. Aff., Dkt. 36-3, at 2). Leeper alleges that Amy Smith ordered him moved to an ADA-noncompliant cell, where he fell and injured himself. (Am. Compl., Dkt. 30, ¶ 85; Supp. Resp. Mot. Summ. J., Dkt. 49, at 3). He asserts a cause of action under Section 1983 against Amy Smith for violating his rights under the Eighth Amendment to the United States Constitution. (Am. Compl., Dkt. 30, ¶ 85).[6]

Leeper had a seizure on July 29, 2014; Amy Smith is the nurse who responded to the medical emergency call. (A. Smith. Aff., Dkt. 36-3, at 2 ¶ 6). Amy Smith avers that she had not met Leeper before and had not previously reviewed his records, which were limited because he had only been in the jail for four days. (*Id.* ¶ 9). In light of the information available to her, she decided to move Leeper to the jail's Health Services Building ("HSB"), where staff could better monitor and respond to future seizures. (*Id.* ¶ 11). In the HSB, inmates are housed near the jail's clinical medical staff, they are observed by correctional officers more experienced with high-medical-needs individuals, and the inmate-to-staff ratio in is lower. (*Id.*). These safeguards facilitate better and closer health care monitoring. (*Id.*). The HSB cells are larger, accommodate wheelchairs, and have medical beds and a medical call button. (*Id.*). Amy Smith could not control the particular cell in the HSB to which

---

[6] The Court liberally construes Leeper's claim to seek relief for a violation of his rights under the Fourteenth Amendment. *Hare*, 74 F.3d at 639; *Haines*, 404 U.S. at 520.

Leeper would be assigned. (*Id.* ¶ 12). Leeper has produced no evidence that Amy Smith decided which particular HSB cell he would be moved to, nor has he produced evidence that moving him to any cell in the HSB—where he would be closer to clinical medical staff—would have created an excessive risk to his health. (*See* Supp. Resp. Mot. Summ. J., Dkt. 49, at 3–4). From this evidence, no reasonable jury could conclude that Amy Smith knew of and disregarded an excessive risk to Leeper's health. Amy Smith has met her burden to show that there is no genuine issue of fact for this claim. She is entitled to summary judgment.

*C. Kathryn Smith*

Defendant Kathryn Smith ("Kathryn Smith") is a nurse practitioner who attended to Leeper in the jail. (K. Smith. Aff., Dkt. 36-4, at 2). Leeper alleges that Kathryn Smith saw him about difficulty urinating and bloody stools but refused to refer him to a doctor. (Am. Compl., Dkt. 30, ¶ 86; Supp. Resp. Mot. Summ. J., Dkt. 49, at 4). As a result, he alleges that he continued to lose blood in his stools and attempted to self-treat his symptoms. (Am. Compl., Dkt. 30, ¶ 86; Supp. Resp. Mot. Summ. J., Dkt. 49, at 4). He asserts a cause of action under Section 1983 against Kathryn Smith for violating his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. (Am. Compl., Dkt. 30, ¶ 86).[7]

Kathryn Smith saw Leeper on August 11, 2014, because he made an unscheduled visit to the clinic at 9:30 p.m. (K. Smith. Aff., Dkt. 36-4, at 2 ¶ 6). At that time of night, the clinic is staffed only by nurse practitioners; there are no doctors on duty. (*Id.* ¶ 9). Leeper and Kathryn Smith got into an argument—they dispute the nature of the exchange—and Leeper asked to see a doctor. (*Id.*; Supp. Resp. Mot. Summ. J., Dkt. 49, at 4). Kathryn Smith told him that she was the only provider on duty and that he would be asked to leave if he was rude. (K. Smith. Aff., Dkt. 36-4, at 2 ¶ 9). Leeper then left. (*Id.*; Supp. Resp. Mot. Summ. J., Dkt. 49, at 4). He saw a doctor four days later. (K. Smith. Aff.,

---

[7] The Court liberally construes Leeper's claims to seek relief for a violation of only his rights under the Fourteenth Amendment. *Hare*, 74 F.3d at 639; *Haines*, 404 U.S. at 520.

7

Dkt. 36-4, at 2 ¶ 11; 8/15/14 Medical Record, Dkt. 36-4, at 10–11). The doctor who saw Leeper on August 15, 2014, did not record a complaint of difficulty urinating, bloody stools, or self-care for either condition. (8/15/14 Medical Record, Dkt. 36-4, at 10–11). Even if Kathryn Smith did not refer Leeper to a doctor, (Supp. Resp. Mot. Summ. J., Dkt. 49, at 4), no reasonable jury could conclude that Kathryn Smith knew of and disregarded an excessive risk to Leeper's health. Kathryn Smith has met her burden to show that there is no genuine issue of fact for this claim. She is entitled to summary judgment.

### D. Prince

Leeper asserts several causes of action against a nurse with the last name Prince ("Prince") in his amended complaint. (Am. Compl., Dkt. 30, ¶ 92). Only his Section 1983 claim remains after the Court's order dated May 31, 2018. (*Compare id. with* Order, Dkt. 47, at 4–5). Leeper does not mention Prince in his sworn supplemental response to Defendants' motion for summary judgment. (*See* Supp. Resp. Mot. Summ. J., Dkt. 49). Accordingly, Leeper has produced no evidence to show a genuine issue of fact for trial for his remaining claim against Prince. She is entitled to summary judgment.

### E. Payne, Johnson and Garcia

Defendants Bradley Payne, Joshua Johnson, and Claudia Garcia (collectively, the "Officer Defendants") are correctional officers who responded to a call for assistance on August 22, 2014, when Leeper had another seizure. (Payne Aff., Dkt. 36-6, ¶ 10; Johnson Aff., Dkt. 36-7, ¶ 7; Garcia Aff., Dkt. 36-8, ¶ 7). Leeper alleges that each officer injured him in a different way through separate uses of excessive force. (Am. Compl., Dkt. 30, ¶¶ 87–90; Supp. Resp. Mot. Summ. J., Dkt. 49, at 5–

6). He asserts causes of action under Section 1983 against each officer for violating his rights under the Eighth Amendment to the United States Constitution. (Am. Compl., Dkt. 30, ¶¶ 87–90).[8]

The Fourteenth Amendment protects a pretrial detainee from "the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). In this context, punishment can consist of actions that are: (a) "taken with an expressed intent to punish" or (b) "not rationally related to a legitimate nonpunitive governmental purpose" or "excessive in relation to that purpose." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (cleaned up). To prove the use of excessive force, a pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* Objective reasonableness turns on the facts and circumstances of a particular case and must be determined according to the perspective of a reasonable officer at the time of the use of force. *Id.* Relevant considerations include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

Leeper avers as follows. He had a seizure in his cell; at some point, Payne arrived and sat on Leeper's chest and held Leeper's hands over his head "in a stress position." (Supp. Resp. Mot. Summ. J., Dkt. 49, at 6).[9] Leeper blacked out and soiled himself. (*Id.*).[10] Medical staff then came to attend to Leeper, but he refused medical attention. (Supp. Resp. Mot. Summ. J., Dkt. 49, at 6). Johnson then had Leeper sign a refusal form and moved him to another room, where Johnson,

---

[8] The Court liberally construes Leeper's claim to seek relief for a violation of his rights under the Fourteenth Amendment. *Haines*, 404 U.S. at 520.

[9] In his deposition, Leeper testified inconsistently about the duration for which Payne held Leeper's hands in a stress position. At first, he testified that it was "a half hour or more." (Leeper Dep., Dkt. 36-15, at 12). He later revised his estimate to "at least 15 minutes." (*Id.*).

[10] In his deposition, Leeper testified that he did not sustain injuries as a result of being sat on and having his arms held in a stress position. (Leeper Dep., Dkt. 36-15, at 12).

9

Garcia, and Payne removed him from his wheelchair. (*Id.* at 5). The officers did so without permission and roughly —they picked him up "by [his] wrists and ankles and dropped [him] to the floor face first." (*Id.*).[11] Leeper says that his wrists, ankles, and forehead were bruised. (*Id.*).[12] The officers later threw a pad into the room and left Leeper on the cold concrete floor. (*Id.* at 5). Johnson brought in a wheelchair, which Leeper got into. (*Id.*). Johnson subsequently grabbed Leeper's shirt "so tight that [he] could not breathe" as a "cruel punishment that [Johnson] seemed to enjoy." (*Id.*).[13]

Payne admits responding to Leeper's seizure but denies sitting on his chest or holding his hands in a stress position or making any physical contact with Leeper during his seizure. (Payne Aff., Dkt. 36-6, ¶¶ 10–12). Payne avers that Leeper was in an open housing unit at the time and that sitting on an inmate during a medical emergency would have attracted negative attention from other inmates and staff. (*Id.* ¶ 14). According to Payne, Leeper would not answer his or other officers' questions, insisting that he was fine, that he did not want medical attention, and that he should be left alone. (*Id.* ¶ 15). Payne says that Leeper yelled disrespectfully at the nurses who responded to attend to him; Payne filed disciplinary charges against Leeper, which required him to be moved to another cell. (*Id.* ¶¶ 16, 19). Other officers then arrived to take Leeper to another room. (*Id.* ¶ 22).

Johnson admits to being the officer who moved Leeper to another room. (Johnson Aff., Dkt. 36-7, ¶ 10). Johnson avers that he "grasped the upper sleeves" of Leeper's shirt as he moved him as a safety measure so that Leeper would not fall out of the wheelchair. (*Id.* ¶ 11). Johnson denies doing so with enough force to obstruct Leeper's breathing or cause discomfort. (*Id.* ¶ 12).

---

[11] In his deposition, Leeper testified that "around half a dozen officers" picked him up and dropped him onto his face. (Leeper Dep., Dkt. 36-15, at 13). He did not identify Payne, Johnson, or Garcia as among those officers.

[12] In his deposition, Leeper testified that his injuries consisted of bruises to his wrists, ankles, knee, chin, and elbow that lasted for a few days. (Leeper Dep., Dkt. 36-15, at 13).

[13] In his deposition, Leeper testified that the tight shirt-wrap bruised his wrists and hands but that he was not otherwise injured. (Leeper Dep., Dkt. 36-15, at 13).

10

Johnson avers that he and other officers placed Leeper on a mattress on the ground so that he would not fall and injure himself if he had another seizure. (*Id.* ¶ 13). He denies picking Leeper up by the wrists and ankles or throwing Leeper face first on the floor. (*Id.*). Johnson states that the floor would not have been cold in August. (*Id.* ¶ 13).

Garcia denies any involvement with Leeper on August 22, 2014, other than taking an emergency head count of the inmates in Leeper's unit while other officers and medical staff attended to Leeper. (Garcia Aff., Dkt. 36-8, ¶ 9). He states that he neither participated in nor witnessed the conduct alleged by Leeper. (*Id.* ¶¶ 9–10). At his deposition, Leeper could not recall what Garcia had done to him. (Leeper Dep., Dkt. 36-15, at 13).

Leeper's only evidence is his sworn statement; he has produced no supporting evidence. He has not produced medical reports documenting his alleged injuries, contemporaneous grievance forms complaining of a use of force or injury, or witness testimony to corroborate his statement. Defendants point out that Leeper did not seek treatment for injuries or pain after the alleged incident. (Mot. Summ. J., Dkt. 36, at 33). Defendants also note that while Leeper did file grievances shortly after August 22, the grievances mentioned nothing about any officers' conduct or any injury; he sought the return of a radio and shoes. (*Id.* at 33–34). Defendants produce incident reports that do not mention complaints of pain or injury. (Payne Incident Report, Dkt. 36-6, at 6–8; Johnson Incident Report, Dkt. 36-7, at 6–7; Garcia Incident Report, Dkt. 36-8, at 5). Defendants argue that if Leeper's allegations were true, there would be incident reports that record complaints of pain or injury or medical records related to the incident. (Mot. Summ. J., Dkt. 36, at 30 (noting that policy requires that medical staff be notified after a use of force and that officers file a supplemental report if the inmate makes a complaint of pain); Johnson Aff., Dkt. 36-7, ¶ 17). Leeper does not dispute that Travis County Sheriff's Office ("TCSO") policy requires a medical examination after a use of force and a supplemental report if an inmate complains of pain after an officer's use of force. (Mot.

11

Summ. J., Dkt. 36, at 30). He does not dispute that other inmates and staff would have seen Payne restraining Leeper in the manner he describes. (Payne Aff., Dkt. 36-6, ¶ 14). Finally, he does not dispute that he did not file a grievance about these alleged uses of force. (*See* Supp. Resp. Mot. Summ. J., Dkt. 49, at 5–6).

Because Leeper does not allege that Defendants acted with an express intent to punish him, the question is whether, viewing the evidence in the light most favorable to Leeper, a reasonable jury could conclude that the officers' actions were either (a) not rationally related to a legitimate nonpunitive governmental purpose or (b) excessive in relation to that purpose. *Kingsley*, 135 S. Ct. at 2473. Because each defendant has asserted qualified immunity, (Mot. Summ. J., Dkt. 36, at 5), Leeper must also meet his burden to overcome that defense. *Brown*, 623 F.3d at 253. He has not.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To negate the Officer Defendants' assertion of qualified immunity, Leeper must show that their conduct violated a constitutional right of the plaintiff and that the right was clearly established at the time of the violation. *Brown*, 623 F.3d at 253. Courts may resolve those prongs in either order at their discretion. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brown*, 623 F.3d at 253 (citing *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)). While there needs not be "a case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S.Ct. 305, 312 (2015) (quoting *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011)). To determine applicable law, district courts in this circuit may

look to other circuits, but must consider "the overall weight" of such authority. *Lincoln v. Turner*, 874 F.3d 833, 850 (5th Cir. 2017).

Even if a jury were to make the many inferences necessary to credit his testimony over the Officer Defendants' testimony, no clearly established law would have been sufficiently clear to inform them that their conduct violated a clearly established right. Since *Kinglsey* clarified the standards for excessive force claims brought by pretrial detainees under the Fourteenth Amendment, the Court of Appeals for the Fifth Circuit has not held that an officer may be liable for a use of force that results in a *de minimis* injury. Another circuit court, meanwhile, has concluded that uses of force resulting in *de minimis* injuries are not unreasonable post-*Kinglsey*. *See Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 531 (6th Cir. 2018) (deciding that shoving the plaintiff into a wall, resulting in no injury, was not objectively unreasonable). Leeper testified that most of the alleged uses of force did not cause him any injury, (*e.g.*, Leeper Dep., Dkt. 36-15, at 12), and that at most some uses of force resulted in bruises that lasted a few days and for which he did not seek medical attention, (*id.* at 13). Because no clearly established law would have given the Officer Defendants fair notice that causing *de minimis* injuries would violate Leeper's Fourteenth Amendment right to be free from excessive force, he has not met his burden to overcome those defendants' qualified immunity defense.[14]

### F. *Hamilton*

Leeper names former Travis County Sheriff Greg Hamilton ("Hamilton") in his complaint, but it is unclear what causes of action he asserts against him. (*See* Am. Compl., Dkt. 30, at 9). Leeper asks for damages against Hamilton after asserting that the allegations in his complaint are common

---

[14] Additionally, Leeper's assertion that Garcia dropped him on his face is unsubstantiated and improbable given that she denies coming into contact with him, he did not mention Garcia's conduct in any of his relatively contemporaneous grievances, and he could not recall her conduct in his deposition. Leeper's single unsubstantiated reference to Garcia in his supplemental response, (Supp. Resp. Mot. Summ. J., Dkt. 49, at 5), is not sufficient to create a genuine issue of fact as to whether she used force against him at all, much less excessive force. She would be entitled to summary judgment even absent qualified immunity because Leeper's evidence against her consists of only unsubstantiated assertions and improbable inferences, which are not sufficient to defeat a motion for summary judgment. *Brown*, 337 F.3d at 541.

practices. (*Id.* ¶ 105). Under a liberal reading of Leeper's complaint, Hamilton is one of the defendants who failed to intervene in the violation of his constitutional rights, and Hamilton is the defendant who failed to discipline the nurses and officers identified as defendants. (*Id.* ¶¶ 113–22). Leeper does not mention Hamilton in his sworn supplemental response to Defendants' motion for summary judgment except to say that Hamilton did not reply to a request for information. (Supp. Resp. Mot. Summ. J., Dkt. 49, at 7). Accordingly, Leeper has produced no evidence to show a genuine issue of fact for his remaining claim against Hamilton. Hamilton is entitled to summary judgment.

*G. Travis County*

Referring to his allegations concerning the individual defendants' conduct, Leeper alleges that "[t]hese are common practices and procedures by Travis County deputies" and states claims for relief against Travis County arising under Title II of the ADA and Section 1983 for violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. (Am. Compl., Dkt. 30, ¶ 105).

1. Leeper's ADA Claims Against the County

Leeper has failed to establish a genuine issue of material fact for his ADA claim against Travis County. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To make out a prima facie case under Title II, a plaintiff must show (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Windham v. Harris Cty., Texas*, 875 F.3d 229, 235 (5th Cir. 2017) (cleaned up).

14

Neither a policymaker nor an official policy need be identified for ADA claims; a public entity "is liable for the vicarious acts of any of its employees as specifically provided by the ADA." *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 575 (5th Cir. 2002). A plaintiff has the burden to "specifically identify the disability and resulting limitations . . . and to request an accommodation in direct and specific terms." *Windham*, 875 F.3d at 237 (cleaned up). "When a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that the disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents." *Id.* (cleaned up). To recover compensatory damages for discrimination under Title II, a plaintiff "must also show that the discrimination was intentional." *Id.* at 235 n.5 (cleaned up).[15]

Travis County does not dispute that Leeper is a qualified individual, but does contest that he was excluded from programs and services by reason of his disability. (Mot. Summ. J., Dkt. 36, at 43). In particular, Travis County argues that if Leeper was placed in an inappropriate cell, it was an unintentional mistake that was promptly corrected. (*Id.* at 44–46). Leeper avers that he was "routinely placed in non-ADA cells despite medical orders and numerous verbal requests." (Supp. Resp. Mot. Summ. J., Dkt. 49, at 2). Leeper admits that his housing in Building 12 was ADA complaint, (Leeper Dep., Dkt. 36-15, at 11), and does not refute Travis County's representation that he spent "the vast majority of his time" at the jail in Building 12, (Mot. Summ. J., Dkt. 36, at 45). The record suggests that Leeper's ADA claim refers to two transfers out of Building 12: once to David North, the medical services building, and later to a segregation cell in Building 2 for disciplinary purposes. (Am. Compl., Dkt. 30, ¶¶ 35, 93; Supp. Resp. Mot. Summ. J., Dkt. 49, at 6; Johnson Aff., Dkt. 36-11, ¶¶ 11–22).

---

[15] Leeper seeks only damages as relief for his ADA claim against Travis County. (Am. Compl., Dkt. 30, ¶ 105).

Regarding the David North transfer, Travis County's grievance sergeant testifies that Leeper was housed in David North for one day to be monitored by medical staff, that Leeper did not request accommodations with his cell in David North, and that the sergeant requested that the cell be modified to accommodate the deficiencies identified in Leeper's grievance form after the fact. (Johnson Aff., Dkt. 36-11, ¶¶ 15–16). Leeper has not presented any evidence to the contrary. Leeper must ultimately show that he directly and specifically requested an accommodation or that the necessary accommodation was open, obvious, and apparent. *Windham*, 875 F.3d at 237. Because he seeks only damages in relief, he must also show that the failure to provide the accommodation was intentional. *Id.* at 235 n.5. The record does not indicate a genuine issue of material fact regarding any of these issues.

Regarding the Building 2 transfer, Travis County admits that the cell in question was not accessible for Leeper but that his assignment to that cell was a quickly corrected mistake. (Mot. Summ. J., Dkt. 36, at 44–45). Leeper was housed in Building 2 for five days. (Leeper Dep., Dkt. 36-15, at 14). He stated in his deposition that he asked for assistance from correctional officers, who ignored him. (*Id.*). The county's grievance sergeant testifies that the assignment was made in error and that she instructed the classifications supervisor not to assign inmates requiring ADA housing to Building 2. (Johnson Aff., Dkt. 36-11, ¶¶ 17–18). Although liability for an ADA claim can lie against Travis County based on the actions of its correctional officers, the evidence supports a finding that Leeper's assignment to Building 2 was based on those officers' negligence but is not sufficient for a reasonable jury to find that his assignment to Building 2 was intentional discrimination based on his physical disability. *See Back v. Tex. Dep't of Criminal Justice Inst'l Div.*, 684 F. App'x 356, 358–59 (5th Cir. 2017) (affirming summary judgment against a Title II plaintiff who failed to overcome evidence of negligence "with his own evidence showing intentional discrimination that was based on his physical disability").

2. Leeper's Section 1983 Claims Against the County

Leeper has also failed to establish a genuine issue of material fact for his Section 1983 claims against Travis County. Leeper's Section 1983 claims against the county are based on the allegation that the actions of the individuals discussed above were "common practices and procedures" of the county. (Am. Compl., Dkt. 30, ¶ 105). A claim of municipal liability under Section 1983 "requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "Without an underlying constitutional violation, an essential element of municipal liability is missing." *Windham*, 875 F.3d at 243 (cleaned up). Because Leeper's claims against the county are based on the actions of the individual defendants discussed above, and because Leeper has not shown that those individuals committed any constitutional violations, he has not established an underlying constitutional violation for his claims against the county. Travis County is therefore entitled to summary judgment on Leeper's Section 1983 claims against it.

## IV. CONCLUSION

For these reasons, the Court **ORDERS** that Defendants' Motion for Summary Judgment, (Dkt. 36), is **GRANTED.** Leeper's claims are **DISMISSED WITH PREJUDICE**.

**SIGNED** on November 9, 2018.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE